## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

LUIS JAVIER MENDOZA-ORDONEZ,    :
    : CIVIL ACTION NO. 1:16-CV-1777
    Petitioner,    :
    : (Judge Mariani)
    v.    : (Magistrate Judge Mehalchick)
CRAIG A. LOWE, et al.,    :
    :
    Defendants.    :
    :

## MEMORANDUM OPINION

## I. INTRODUCTION

Presently before the Court is a Report and Recommendation ("R&R") (Doc. 44) by Magistrate Judge Mehalchick in which she recommends that Petitioner's Motion for Attorney's Fees and Costs Pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412 (Doc. 35) be denied.

A District Court may "designate a magistrate judge to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition" of certain matters pending before the Court. 28 U.S.C. § 636(b)(1)(B). If a party timely and properly files a written objection to a Magistrate Judge's Report and Recommendation, the District Court "shall make a *de novo* determination of those portions of the report or specified proposed findings or

recommendations to which objection is made." *Id.* at § 636(b)(1)(C); *see also* Fed. R. Civ. P. 72(b)(3); M.D. Pa. Local Rule 72.3; *Brown v. Astrue*, 649 F.3d 193, 195 (3d Cir. 2011).

Petitioner filed objections to the R&R and a brief in support of his objections. (Docs. 45, 46.) Respondents timely filed a response to the objections. (Doc. 47.)

Upon review of the R&R and the parties' filings, the Court finds that Respondents' position regarding Petitioner's continuing detention was substantially justified until November 1, 2016, when, following a request from Petitioner's counsel on August 30, 2016, to reconsider detention based on the Third Circuit Court of Appeals' stay order's effect on the reasonable foreseeability of Petitioner's removal, Respondents' counsel communicated to Petitioner's counsel, without elaboration, that ICE's position remained the same. For the reasons discussed below, the Court concludes that Respondents have not satisfied their burden of showing substantial justification for their position thereafter. Therefore, Petitioner is entitled to attorney's fees under the Equal Access to Justice Act beginning on November 2, 2016, and the Court does not adopt the Magistrate Judge's conclusion that Respondents satisfied their burden of establishing substantial justification for their position and the recommended denial of Petitioner's motion for fees (Doc. 44 at 9).

## II. ANALYSIS

Petitioner objects to the R&R "because in focusing almost entirely on Respondents' litigation position, the R&R overlooks Mr. Mendoza's arguments that the Government's actions that *resulted* in Mr. Mendoza's continued detention were not substantially justified."

(Doc. 45 at 1 (citing Doc. 37 at 8-10; Doc. 44 at 8).)   He further asserts that "because Respondents did not demonstrate that they were substantially justified in detaining Mr. Mendoza for over two years, his EAJA Motion should be granted." (*Id.* at 2.)

Although the Court finds Petitioner's objection vague and essentially a challenge to Magistrate Judge Mehalchick's conclusion that Respondents position was substantially justified, the brief supporting his objections narrows the scope of the objection.  (*See* Docs. 45, 46.)   In his supporting brief, Petitioner focuses on arguments previously made which are both factual and legal and not addressed in the R&R with its analytical focus on Respondents' litigation position.  (Doc. 46 at 5-10.)   By way of example of the narrow focus of the R&R's analysis, Petitioner points to the Magistrate Judge's statement that "'Mendoza [is] solely arguing that the litigation position taken by Respondents did not have a reasonable basis in law.'" (*Id.* at 5 (quoting Doc. 44 at 8).)

The R&R identified the question before the Court in the habeas petition to be "whether an alien who is subject to a reinstated removal order, but who is going through withholding-of-removal proceedings, is considered detained by §§ 1226 or 1231." (Doc. 44 at 8 (citing Doc. 32 at 10-11)[1].)   The Magistrate Judge focused her analysis of the central question of whether Respondents' position was substantially justified (the statutory

---

[1] Doc. 32 is the Court's July 26, 2017, Memorandum in which it determined that Petitioner's detention was governed by § 1226 rather than § 1231.  (Doc. 32 at 16.).  With the accompanying Order, the Court granted the habeas petition (Doc. 1) and ordered an immigration judge to conduct an individualized bond hearing within twenty-one days.  (Doc. 33 at 1.)

requirement for the award of fees pursuant to 28 U.S.C. § 2412(d)(1)(A)) on Respondents' litigation position related to §§ 1226 and 1231. (Doc. 44 at 8-9.) In so doing, the Magistrate Judge did not consider broader arguments identified from the onset of the litigation. In the brief supporting his objections, Petitioner frames the broader argument as follows: if Respondents had been correct that he was detained pursuant to 8 U.S.C. § 1231 rather that 8 U.S.C. § 1226 as Petitioner argued, their position would not have been substantially justified pursuant to *Zadvydas v. Davis*, 533 U.S. 678 (2001), because his "removal was 'no longer reasonably foreseeable.'" (Doc. 46 at 7 (quoting *Zadvydas*, 533 U.S. at 699).) Because Petitioner had made a similar argument in support of his attorney fees (Doc. 43 at 3-4) and both Petitioner and Respondents propounded arguments regarding the reasonable foreseeability of Petitioner's removal apart from the statutory issues from the commencement of this litigation through the fee-related filings (*see, e.g.*, Doc. 1 at 19-20; Doc. 6 at 18-20; Doc. 37 at 9; Doc. 42 at 18), the Court concludes that, to the extent Petitioner objects to the lack of consideration of this issue, the objection is sustained. However, whether this analytical deficiency warrants a conclusion that Petitioner is entitled to attorney's fees is another matter. To answer that question, the Court must consider *de novo* whether the R&R properly concluded that Petitioner is not entitled to fees and costs under the Equal Access to Justice Act.

## A.  EQUAL ACCESS TO JUSTICE ACT LEGAL FRAMEWORK

The parties agree on the basic legal framework for an award of attorney's fees under the Equal Access to Justice Act ("EAJA" "Act").  (Doc. 37 at 3-4; Doc. 42 at 14-16; Doc. 46 at 6; Doc. 47 at 3-4.)  The EAJA provides as follows:

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A).  In *Morgan v. Perry*, 142 F.3d 670 (3d Cir. 1998), the Circuit Court explained what is meant by "substantially justified":

> The Supreme Court has defined substantial justification under the EAJA as "justified in substance or in the main—that is, justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood*, 487 U.S. [552, 565 (1988)]. That is to say, the government's position is substantially justified "if it has a reasonable basis in both law and fact." *Hanover Potato Products, Inc. v. Shalala*, 989 F.2d [123, 128 (3d Cir. 1993)]. The government has the burden of establishing that there is substantial justification for its position. *Id.* at 128. In order to do so, the government must show: (1) a reasonable basis in truth for the facts alleged; (2) a reasonable basis in law for the theory it propounded; and (3) a reasonable connection between the facts alleged and the legal theory advanced. *Id.*

> The government's position under the EAJA includes "not only the position taken in the litigation but the agency position that made the litigation necessary in the first place." *Id.* Thus, unless the government's pre-litigation and litigation positions have a reasonable basis in both law and fact, the government's position is not substantially justified. *Id.; see also Taylor v. Heckler,* 835 F.2d 1037, 1040 (3d Cir.1988) ("[T]he government is deemed to have two positions for EAJA purposes, both [of which] must be substantially

justified.... [I]f either government position does not bear scrutiny, the prevailing party should be awarded attorneys' fees [and other reasonable fees and expenses].").

*Morgan*, 142 F.3d at 683–84.  To satisfy its burden, "the government must make a strong showing that its position was substantially justified." *Nat. Res. Def. Council, Inc. v. U.S. E.P.A.*, 703 F.2d 700, 712 (3d Cir. 1983) (internal quotation omitted); see also *Washington v. Heckler,* 756 F.2d 959, 968 (3d Cir.1985) (Aldisert, C.J., concurring) (quoting *Nat. Res. Def. Council, Inc.*, 703 F.2d at 712) (adding "this burden is not satisfied because the government can point to "some evidence" in its favor").

The standard for determining whether, for purposes of the EAJA, a party has a reasonable basis in law for a position was set out by the Court of Appeals in *Washington*:

> If ... the case turns on an unsettled or "close question of law," ... the government usually will be able to establish that its legal theory was "reasonable," even if it was not ultimately accepted as legal by the courts. When the government's legal position clearly offends legal precedent, however, its position cannot be said to be "substantially justified."

*Id.* at 961–62 (quoting *Dougherty v. Lehman,* 711 F.2d 555, 563 (3d Cir.1983)).  "Therefore, for the government, in relying entirely upon a legal argument, to establish that its position was substantially justified, it must demonstrate that that argument presented an unsettled or close question of law." *Lee v. Johnson*, 799 F.2d 31, 38 (3d Cir. 1986).

Though not a *per se* rule, "'Agency action found to be unsupported by substantial evidence is virtually certain not to have been substantially justified under the Act.'" *Taylor*

*v. Heckler,* 835 F.2d 1037, 1044 (3d Cir.1988) (quoting H.R. Rep. No. 120, 99th Cong., 1st

Sess. 9–10, *reprinted in* 1985 U.S. Code Cong. & Admin. News 132, 138).

"Whether or not the position of the United States was substantially justified shall be

determined on the basis of the record (including the record with respect to the action or

failure to act by the agency upon which the civil action is based) which is made in the civil

action for which fees and other expenses are sought." 28 U.S.C. § 2412(d)(1)(B). As noted

in *Clarke v. INS,* 904 F.2d 172, 175 n.5 (3d Cir. 1990), "because the EAJA is a 'waiver of

the sovereign's traditional immunity from claims for attorney's fees,' it had to be construed

strictly in favor of the United States.'" *Id.* (quoting *Smedberg Machine & Tool, Inc. v.

Donovan,* 730 F.2d 1089 (7th Cir. 1984)); *see also Kiareldeen v. Ashcroft,* 273 F.3d 542, 554

(3d Cir. 2001) (citing *Clarke,* 904 F.2d at 175)).

## B.    PETITIONER'S ENTITLEMENT TO FEES

Before undertaking the three-prong inquiry set out in *Hanover* to determine whether

Respondents have shown that their position was substantially justified, 989 F.2d at 128, the

Court must identify the position under consideration. *See, e.g., Nken, v. Holder,* 385 F.

App'x 299, 301 (4th Cir. 2010). The operative positions are that Petitioner was subject to 8

U.S.C. § 1231 rather than 8 U.S.C. § 1226[2] (Doc. 42 at 16); that "Petitioner's detention,

though exceeding six months, was not unconstitutional and did not violate the INA, because

---

[2] The practical effect of the distinction, as will be set out later in the text, is that, under § 1231, Petitioner was not statutorily entitled to a bond hearing.

Petitioner's removal was reasonably foreseeable and because Petitioner did not provide any reason to believe that there was no significant likelihood of removal in the reasonably foreseeable future" (*id.* at 18; *see also id.* at 16); and that his detention, if not pursuant to § 1231, was pursuant to § 1225 (*id.* at 16).

Turning now to *Hanover's* three-pronged inquiry, i.e., whether Respondents have shown (1) a reasonable basis in truth for the facts alleged; (2) a reasonable basis in law for the theory it propounded; and (3) a reasonable connection between the facts alleged and the legal theory advanced, 989 F.2d at 128, the Court will first review the facts alleged.

1. <u>Facts Alleged</u>

As noted in the R&R, the material facts are not in dispute. (Doc. 44 at 8.) However, because the "substantially justified" inquiry is fact specific, *see, e.g., Walker v. Lowe*, Civ. A. No. 4:15-CV-0887, 2016 WL 6082289, at *2 (M.D. Pa. Oct. 16, 2016), the Court sets out facts directly relevant to the matters under consideration and additional facts which provide context for the consideration of such matters. These facts are derived from multiple filings and documents of record as well as judicial documents of which the Court takes notice. To the extent step three of the inquiry requires that Respondents show a reasonable connection between the facts alleged and their position, 989 F.2d at 128, the Court will specifically identify relevant facts alleged by Respondents in the context of the discussion of the connection between facts alleged and legal theories advanced at step three.

Because the Court is to consider whether Respondents' pre-litigation and litigation positions have a reasonable basis in both law and fact to determine if their position was substantially justified, *Hanover*, 989 F.2d at 128, the Court identifies relevant facts in each time period.

a.     *Pre-Litigation Period Facts of Record*

Based on entry into the United States without inspection on November 27, 2014, Petitioner was apprehended by the United States Customs and Border Protection ("CBP") and ordered removed to his native Honduras under expedited procedures outlined in 8 U.S.C. § 1225(b)(1).[3]  (Doc. 6 at 2.)  In July 2015, Petitioner re-entered the United States on or about July 19, 2015.  (*Id.*)  He was apprehended, and, on July 28, 2015, his prior expedited order of removal was reinstated.  (*Id.*)  After he expressed a fear of return to Honduras, the reinstated order was not executed and his case was instead transferred to an asylum officer for a "reasonable fear" interview.  (Doc. 1 at 7.)

On August 12, 2015, Petitioner was transferred to York County Prison in York, Pennsylvania.  (*Id.* at 8.)  On August 13, 2015, Petitioner was served with a "Notice to Alien of File Custody Review," advising that he was being detained in ICE custody without bond.  (*Id.*)  The Notice informed Petitioner that ICE would review his custody status again on or about October 11, 2015, at which time the Deciding Officer would review his case "for consideration of release on an Order of Supervision."  (Doc. 1-5 at 2.)  The Notice added

_____

[3]  Petitioner was not then, and never has been, arrested or convicted of a crime.  (Doc. 1 at 2.)

that "[r]elease is dependent on your demonstrating to the satisfaction of the Secretary of Homeland Security that you will not pose a danger to the community and will not present a flight risk." (*Id.*) Factors identified as relevant to the determination included the following: 1) criminal convictions and criminal conduct; 2) other criminal and immigration history; 3) sentences imposed and time actually served; 4) history of escapes, failures to appear for judicial or other proceedings, and other defaults; 5) probation history; 6) disciplinary problems while incarcerated; 7) evidence of rehabilitative effort or recidivism; 8) equities in the United States; 9) cooperation in obtaining travel documents; and 10) any available mental health reports. (*Id.*)

On September 1, 2015, an officer of the Newark Asylum Office conducted an interview with Petitioner regarding his fear of returning to Honduras. (Doc. 1 at 8.) On September 14, 2015, the officer issued his Notice of Referral to Immigration Judge in which he found that Petitioner had a reasonable fear of persecution or torture and informed Petitioner that his case was being referred to an immigration judge for review of the officer's determination. (Doc. 1-6 at 2-3.)

On September 28, 2015, Petitioner's counsel sent a letter to the York County Prison and Newark Asylum Office "Re: Request for ICE Bond" for Petitioner.[4] (Doc. 1-7 at 2.) He identified several factors in support of the request, including that Petitioner was not subject

---

[4] Counsel at the time was Guillermo Carillo, an attorney with the Pasadena, California, Huprich Law Firm, P.C., who had met with Petitioner in a detention center in Brownsville, Texas. (Doc. 1-7 at 2-3.)

to mandatory detention, he was a college student who had been persecuted in Honduras because of involvement in politics and for criticizing corruption, he had no criminal record in the United States or Honduras, he was not a flight risk or danger to the community, he understood the need to appear for court hearings should he be released and would appear, he had strong family ties in the United States including his birth mother, aunt and uncle, and, "upon information and belief," he had been an ideal detainee during his incarceration. (*Id.* at 2-4.)

On October 14, 2015, Respondent Thomas Decker, the Field Office Director for Enforcement and Removal Operations ("ERO") in the Philadelphia Field Office of U.S. Immigrations and Customs Enforcement with jurisdiction over the detention facility in which Petitioner was held (Doc. 1 at 4), sent Petitioner a Decision to Continue Detention notice. (Doc. 1-8 at 2-3.) The notice summarily reviewed Petitioner's case and stated the following:

> You have attempted to evade immigration controls along the U.S. border on multiple occasions. You were recently apprehended at the border while attempting to unlawfully enter the United States. Therefore, you are within the highest enforcement priorities as outlined in the DHS Secretary's revised promulgated memorandum regarding apprehension, detention, and removal of undocumented immigrants dated November 14, 2014. For these reasons, you are considered a flight risk.

> Based on the above, you are to remain in ICE custody pending a review by the Immigration Judge. If you have not been released or removed from the United States by January 24, 2016, jurisdiction of the custody decision in your case will be transferred to the Headquarters Post Order Custody Review Unit (HQPOCRU) . . . . POCRU will make a final determination regarding custody.

(Doc. 1-8 at 3.)[5]

On October 27, 2015, Petitioner appeared for a master calendar hearing before an immigration judge ("IJ") at which Petitioner was represented by his current counsel, Joseph A. Brophy, Esq. (Doc. 1-9.) During the hearing, the IJ informed Petitioner that he was not eligible for a bond because it was a "withholding only case." (*Id.* at 5.)

On February 8, 2016, HQPOCRU Chief Ryan Howe issued a Decision to Continue Detention. (Doc. 1-10 at 2.) The Decision said it was based on a review of Petitioner's "file record and/or personal interview and consideration of any information you submitted to ICE reviewing officials." (*Id.*) The Decision also stated that, due to Petitioner's pending fear claim, ICE was unable to move forward with his removal from the United States "at this time" and, pending a ruling on the claim, he was to remain in ICE custody. (*Id.*) Petitioner was further advised that the decision did not prevent him from presenting evidence in the future to demonstrate a good reason why his removal was unlikely. (*Id.*)

Petitioner had an Individual Hearing before another IJ on February 11, 2016. (Doc. 1 at 10.) On March 1, 2016, the IJ issued a written decision denying Petitioner's claims for relief. (*Id.*) On March 29, 2016, Petitioner timely appealed the IJ's decision to the Board of Immigration Appeals ("BIA"). (*Id.* at 11.) In the direct appeal, Petitioner claimed

> that the Immigration Judge erred by: deciding that he was ineligible for withholding of removal; concluding that he failed to prove the Honduran government was unwilling or unable to protect him; ruling that he could safely

---

[5] The Decision to Continue Detention did not reference factors outlined in Attorney Carrillo's September 28, 2015, correspondence.

relocate in Honduras; deciding that he should be placed in a "withholding only" proceeding; and finally, declaring that he was ineligible for asylum.

*Mendoza-Ordonez v. Attorney Gen. of United States*, 869 F.3d 164, 168 (3d Cir. 2017).[6]

On or about April 21, 2016, Petitioner was moved to Pike County Prison in Hawley, Pennsylvania. (*Id.*)

On June 23, 2016, Petitioner's counsel sent an e-mail to ICE officials requesting Petitioner's release during his appellate proceedings. (Doc. 1-12 at 2.) The e-mail noted that, although the IJ had denied Petitioner's claim, she found that he was credible and had experienced past persecution in Honduras. (*Id.*) Counsel highlighted the fact that Petitioner had been in detention for over a year (since July 2015) and noted his family ties, lack of criminal record, and undisputed persecution in Honduras in support of the request for release pending the exhaustion of his appeals. (*Id.*)

On July 11, 2016, the BIA issued the Decision of the Board of Immigration Appeals. (Doc. 1-11.) The Decision identified Petitioner's claims on appeal as follows:

> The applicant contends that the Immigration Judge erred in denying his applications for relief. Specifically, the applicant contends that the Immigration Judge erred in determining that the government of Honduras was not unable or unwilling to protect him and that he could reasonably relocate within Honduras. The applicant also argues that the Immigration judge erred in determining that he is ineligible for protection under the Convention Against Torture. Finally, the applicant argues that he should have been permitted to apply for asylum even though he entered the United States after a prior removal order.

---

[6] The Court cites the Third Circuit's August 23, 2017, decision only for the factual information it provides about issues raised in filings and/or events which occurred during the relevant time period.

(Doc. 1-11 at 3-4.)  The BIA did not find merit in Petitioner's arguments and dismissed the appeal.  (*Id.* at 4-5.)

On August 9, 2016, Petitioner timely filed a Petition for Review ("PFR") of the BIA decision in the United States Court of Appeals for the Third Circuit.  (Doc. 1-13.)  The PFR sought review of the BIA's dismissal of Petitioner's asylum claim and his withholding of removal claim.  *See, e.g., Mendoza-Ordonez*, 869 F.3d at 168.[7]

On August 10, 2016, Petitioner filed a motion for stay of removal with the Third Circuit which was temporarily granted on the same day.  (Doc. 1-14.)  The Circuit Court order stated that removal was "stayed until such time as the Court can consider the motion for stay of removal."  (*Id.* at 2.)

Following the BIA's decision, ICE responded to Petitioner's counsel's June 23, 2016, e-mail (Doc. 1-12) and denied the request for release.  (Doc. 1-15 at 2-3.).  (Doc. 1-15.)  Though Petitioner says the request was denied with correspondence of August 10, 2016, the correspondence is undated.[8]  The correspondence stated that, after a review of

---

[7] *See supra* n.6.  Regarding his withholding of removal claim, the Circuit Court stated

> Mendoza alleges the BIA made two errors. First, he contends the entire record compels a result contrary to BIA's finding that he failed to produce sufficient evidence to support his request for withholding of removal. He also claims that the BIA applied the wrong standard of review when it analyzed his argument that the Immigration Judge ignored key evidence.

*Mendoza-Ordonez*, 869 F.3d at 169.

[8] Though undated, the correspondence recognizes the BIA's July 11, 2016, dismissal.  (Doc. 1-15 at 2.)  Respondents identify July 6, 2016, as the date of the denial.  (Doc. 6 at 5.)  However, this is incorrect based on the relevant timeline.

Petitioner's file, the request for release was being denied based on the lack of an urgent humanitarian reason of significant public benefit, as well as the determination that Petitioner was an enforcement priority and posed a flight risk. (*Id.* at 2-3.) Petitioner also points to ICE's statement that his "request for a stay of removal is hereby denied," noting that that he had not requested that ICE issue a stay of removal. (Doc. 1 at 13 n.3.)

b.  *Litigation Period Facts of Record*

Petitioner filed this action on August 26, 2016, asserting that he was improperly detained on both statutory and constitutional grounds. (Doc. 1.) On August 29, 2016, the Court issued an Order to Show Cause directing Respondents to respond to the habeas petition. (Doc. 2.)

On August 29, 2016, Petitioner's counsel called Joanne Hoffman, Esq., of the United States Attorney's Office for the Middle District of Pennsylvania and raised the possibility of resolving the matter through a negotiated supervised release. (Doc. 35 at 6; Doc. 35-4 ¶ 11(c).)

On August 30, 2016, the Third Circuit issued a stay of removal pending an adjudication of the petition for review. (Doc. 6 at 6.) The Order stated that the stay was granted because Petitioner had met the standard of obtaining relief. (Doc. 7-4 at 2 (citing *Nken v. Holder*, 556 U.S. 418, 434 (2009)).)

The day he received the Circuit's stay order, Petitioner's counsel e-mailed Attorney

Hoffman, attaching a copy of the order and reiterating his request for release. (Doc. 35-7 at

2.) He stated that the order

> indicates that the Third Circuit agreed with our argument that we are likely to
> succeed on the merits on Mr. Mendoza's petition for review, and further
> indicates that Mr. Mendoza's removal is not reasonably foreseeable at present.
>
> Again, we would be amenable to discussing resolution of this matter via
> supervised release, if the government has any interest in opening such a
> dialogue. Mr. Mendoza is a non-criminal alien who has been in detention for
> over a year.

(*Id.*) His correspondence also indicated that he did not know if Attorney Hoffman would be

assigned the case going forward. (*Id.*) On the same day, Attorney Hoffman replied and

indicated that she would "pass the information along to ICE." (*Id.*)

On September 1, 2016, another custody review was concluded for Petitioner.[9] (Doc.

6 at 6.)

On September 19, 2016, Respondents filed their Response to Petition for Writ of

Habeas Corpus in which they asserted that Petitioner's detention did not violate statutory,

regulatory, or constitutional principles.[10] (Doc. 6.)

On September 20, 2016, Respondents submitted Exhibits supporting their response,

including the undated Declaration of Paul Posluszny, Supervisory Detention and

---

[9] The record does not contain any details about this review.

[10] In the factual review, the Court includes only filings which may be relevant to the "substantially justified" inquiry.

Deportation Officer. (Doc. 7-2.) Mr. Posluszny's statements included the following: he was the officer assigned to the removal efforts regarding Petitioner and was familiar with his immigration records and litigation history; he was aware of Petitioner's appeal of the BIA decision to the Court of Appeals for the Third Circuit and that Court's August 30, 2016, stay of removal; Petitioner had custody reviews on October 13, 2015, January 15, 2016, April 22, 2016, and September 1, 2016; Petitioner, through his attorney, had submitted a request for release, a review of Petitioner's file was conducted, and a formal response was forwarded to Petitioner's attorney on July 6, 2016;[11] and it had been his "experience that the government of Honduras promptly issues travel documents upon request for the repatriation of its nationals. Once the stay of removal is lifted, Mendoza's removal would occur approximately 30 days later." (Doc. 7-2 at 2.)

Following the issuance of a decision characterized as "remarkably similar to Mr. Mendoza's," *Ignacio v. Sabol*, No. 1:15-CV-2423, 2016 WL 4988056 (M.D. Pa. Sept. 19, 2016) (Caldwell, J.), Petitioner's counsel reached out via e-mail to Sairah Saeed, Esq., attorney for Respondents,[12] informing her of the *Ignacio* decision and its favorable

---

[11] *See supra* p. 14 & n.8

[12] Respondents' attorneys of record are Brian C. Ward (U.S. Department of Justice ("USDOJ"), Washington, D.C.), Gisela A. Westwater (District Court Section, Office of Immigration Appeals, USDOJ, Washington, D.C.), Sairah G. Saeed (Civil Division, Office of Immigration Appeals, USDOJ, Washington, D.C.), and Kate Mershimer (U.S. Attorney's Office, Harrisburg, Pa.).

implications for Petitioner's case.[13]  (Doc. 35 at 7-8; Doc. 35-8 at 4-5.)  He specifically

stated the following in his October 19, 2016, e-mail:

> We do not see how it serves anyone's benefit to have ICE continue to detain
> Mr. Mendoza, a non-criminal alien who has now been detained for well over a
> year, given that now it appears to be just a matter of time until Mr. Mendoza's
> habeas petition is granted by Judge Caldwell and he receives a bond hearing.
> If the Government is amenable to discussing the terms of Mr. Mendoza's
> supervised release rather than continuing to litigate his habeas petition, please
> let me know.

(Doc. 35-8 at 5.)  On October 31, 2016, Petitioner's counsel e-mailed Attorney Saeed to see

if she had gotten any feedback from ICE on the suggestion that habeas petition be resolved

through supervised release.  (Doc. 35-9 at 2.)  On November 1, 2016, Attorney Saeed

responded that "ICE has indicated that their position remains the same."  (*Id.*)

On November 18, 2016, at which point Petitioner had been detained for 478 days,

Petitioner's counsel wrote to Respondents' counsel, Attorney Saeed and Attorney Gisela

Westwater, stating that the *Ignacio* decision combined with the Third Circuit's stay of

removal indicated that the Government's position in the litigation was "no longer

'substantially justified'" and, if the matter could not be resolved through supervised release,

he would move for attorney's fees at the resolution of the case.  (Doc. 35-10 at 2-3.)

Attorney Westwater responded on December 5, 2016, stating "[w]hile ICE thanks you for

---

[13] By verbal Order of February 6, 2018, this case was reassigned from Judge Caldwell to the undersigned.
Thus, Judge Caldwell presided over the case through the disposition of Petitioner's 28 U.S.C. § 2241
petition and the filing of the motion for attorney's fees and related briefing at issue here.  (*See* Docs. 1-43.)

reaching out regarding possible settlement, my client is unable to release your client at this time." (Doc. 35-11 at 2.)

On May 9, 2017, a three-judge panel of the Third Circuit heard oral argument on Petitioner's pending PFR. (Doc. 35 at 11.) Judge Ambro, a member of the panel, described Honduras as "'the Wild West on steroids'" and said to Government counsel

> "the facts here are really bad. And those facts are so significant, not to have them discussed by the IJ, and not to have them discussed by the BIA, in and of itself seems to call for a remand. It doesn't mean you don't win in the end, but, as they say in South Philly, 'no lookin' too good today.'"

(Doc. 28 at 10 n.7 (quoting Oral Argument recording in *Mendoza-Ordonez v. Att'y Gen. of U.S.*, No. 16-3333, at 14:2, 19:18 (3d Cir. argued May 9, 2017); *see also* Doc. 35 at 12.)[14] Judge Ambro also followed up comments made by Judge Restrepo, another member of the panel, regarding the Honduran situation relevant to Petitioner with the statement that "'[a]ny of us in this room would be fearful for our lives or would want to get out.'" (Doc. 28 at 7 n.10 (quoting Oral Argument recording in *Mendoza-Ordonez v. Att'y Gen. of U.S.*, No. 16-3333, at 21:22).)

On May 24, 2017, Magistrate Judge Mehalchick issued a Report and Recommendation recommending that Petitioner's habeas petition be granted. (Doc. 22.) She found that *Ignacio* was "nearly indistinguishable" from the instant case and agreed that Petitioner's detention was pursuant to 8 U.S.C. § 1226. (*Id.* at 10.)

---

[14] Audio available at http://www2.ca3.uscourts.gov/oralargument/audio/16-333Mendoza-OrdonezcAttyFenUSA.mp3.

On May 25, 2017, Petitioner's counsel e-mailed Respondents' counsel Brian Ward asking that the Government reconsider its position regarding Petitioner's continued detention. (Doc. 35-12 at 5-6.) He noted that he had had many conversations about Petitioner's release with other DOJ attorneys who had worked on the case but was reaching out again given the R&R's recommendation and comments made at the May 9, 2016, Third Circuit oral argument. (*Id.*) Petitioner's counsel included pertinent comments in his e-mail. (*Id.*) In addition to the comments and procedural posture of the habeas petition, Petitioner's counsel pointed to Petitioner's lack of criminal record and his incarceration of almost twenty-two months. (*Id.* at 5.) In urging Respondents' counsel to explore the possibility of a negotiated supervised release, Petitioner's counsel stated that "[g]iven the strong probability of a remand by the Third Circuit, it is extremely unlikely that Mr. Mendoza will be removed in the near future, if at all." (*Id.* at 6.)

On May 31, 2017, Attorney Saeed responded: "I have discussed with my clients and they are not interested in a bond hearing or supervised release for Mr. Mendoza-Ordonez." (Doc. 35-12 at 3.) Petitioner's counsel then asked Attorney Saeed whether ICE provided a rationale for its position and also requested information about custody reviews. (*Id.* at 2.) Regarding reviews, he specifically wanted to know when Petitioner had his last formal custody review, adding that "[w]e have not received any indications of a custody review since August 2016. If there have been custody reviews, we should . . . have been receiving such notices as Mr. Mendoza's attorneys of record." (*Id.*) On June 1, 2016, Attorney

Saeed responded that "ICE has simply stated they are not interested in a bond hearing or supervised release for Mr. Mendoza. I have inquired with ICE regarding the custody reviews and will pass along the information provided." (*Id.*)

On July 26, 2017, the Court granted Petitioner's habeas petition and ordered that he receive a bond hearing. (Docs. 32, 33.) On August 7, 2017, the IJ granted Petitioner's request for bond, and set the bond at $10,000. (Doc. 34 at 1.) The next day, Petitioner's family posted bond, and Petitioner was released from custody after 743 days. (Doc. 35 at 14 (citing Doc. 34).)

2.   <u>Legal Theory</u>

The Court now turns to the second prong of the *Hanover* inquiry which addresses the question of whether respondents have satisfied their burden of establishing substantial justification for their position because there was a reasonable basis in law for the theory they propounded. 989 F.2d at 128. Throughout this litigation, Respondents have identified a statutory basis and a constitutional basis for their position: from a statutory perspective, because Petitioner was detained pursuant to 8 U.S.C. § 1231 rather than 8 U.S.C. § 1226, he was not entitled to a bond hearing (*see, e.g.*, Doc. 6 at 2, Doc. 42 at 11); and from a constitutional perspective, Petitioner's continued detention did not run afoul of due process principles announced in *Zadvydas v. Davis*, 533 U.S. 678 (2001), and regulations enacted after *Zadvydas, e.g.*, 8 C.F.R. § 241.4 (*see, e.g.*, Doc. 6 at 17, Doc. 47 at 12). At oral argument on March 19, 2017, Respondents first asserted the position that, if § 1231 did not

apply to Petitioner's detention, then 8 U.S.C. § 1225, the statute under which he was detained on his first attempt to enter the United States in 2014, controlled his detention. (*See* Doc. 22 at 5.)

As set out above, the standard for determining whether, for purposes of the EAJA, a party has a reasonable basis in law for a position was set out by the Court of Appeals in *Washington*:

> If ... the case turns on an unsettled or "close question of law," ... the government usually will be able to establish that its legal theory was "reasonable," even if it was not ultimately accepted as legal by the courts. When the government's legal position clearly offends legal precedent, however, its position cannot be said to be "substantially justified."

*Id.* at 961–62 (quoting *Dougherty v. Lehman,* 711 F.2d 555, 563 (3d Cir.1983)).  This case does not exclusively "turn" on a question of law.  However, questions of law are at issue and the Court will review whether the status of the law on relevant issues was unsettled at the time this habeas action was being litigated to determine if Respondents had a reasonable basis for the legal theories advanced.

*a.      Statutory Basis for Detention*

     i.        8 U.S.C. § 1226 versus 8 U.S.C. § 1231

The Court agrees with the R&R that the question of which statutory provision applied in Petitioner's case was unsettled before and during the pendency of this litigation.  (Doc. 44 at 8-9.)  The state of the law during the relevant time was clearly unsettled as argued by Respondents (*see, e.g.,* Doc. 42 at 11-13, 17-20), noted by the Court in its 2017 decision

granting Petitioner's habeas petition (*see* Doc. 32 at 10-12)[15], and later confirmed in *Guerrero-Sanchez*, 905 F.3d 208, 213–14 (3d Cir. 2018). Importantly, Respondents correctly assert that the statutory matter at issue in *Ignacio* had been appealed to the Third Circuit in November 2016. (*See* Doc. 42 at 11-12 (indicating that the §§ 1226/1231 statutory matter at issue in *Ignacio* was under appeal in *Guerrero-Sanchez v. Warden York County Prison*, No. 16-3134 (3d Cir. Nov. 17, 2016).) With its 2018 decision, the Third Circuit Court announced its determination that 8 U.S.C. § 1231 controlled the detention of a detainee with a reinstated order of removal who was in withholding-only proceedings, like Petitioner here.[16] Before doing so, the Circuit Court considered the relevant legal framework, part of which examines the provisions at issue here:

> Section 1226 is the pre-removal provision of the INA and "generally governs the process of arresting and detaining ... aliens pending their removal." *Jennings v. Rodriguez*, ––– U.S. ––––, 138 S.Ct. 830, 837, 200 L.Ed.2d 122 (2018). It provides that "an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). Critical for the purposes of this case, an alien detained under § 1226(a) must be afforded a bond hearing before an immigration judge to determine if the alien's detention is necessary while he or she awaits immigration proceedings. *See Jennings*, 138 S.Ct. at 837 ("[T]he Attorney General 'may release' an alien detained under § 1226(a) 'on bond ... or conditional parole.' " (quoting 8 U.S.C. § 1226(a) ) ); 8 C.F.R. § 236.1(d)(1) ("[T]he immigration judge is authorized to exercise the authority ... to detain the alien in custody, release the alien, and determine the amount of bond.").

---

[15] *See supra* n.13 regarding Judge Caldwell's handling of this case through and beyond the determination on the habeas petition.

[16] The Court considers this decision, issued well after the habeas matter was decided in this Court, only for the context it provides regarding the unsettled nature of the law at the relevant time.

Section 1231(a) is the post-removal detention provision of the INA and applies to aliens who are subject to a final order of removal. It provides that "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days." 8 U.S.C. § 1231(a)(1)(A). The provision requires that the alien be detained during this 90-day timeframe, *see* 8 U.S.C. § 1231(a)(2), which is "referred to as the 'removal period.'" 8 U.S.C. § 1231(a)(1)(A). "If the alien does not leave or is not removed within the removal period," then he is normally subject to supervised release. 8 U.S.C. § 1231(a)(3). Section 1231(a)(6), however, authorizes the continued detention of certain classes of aliens "beyond the removal period," 8 U.S.C. § 1231(a)(6), for a timeframe "reasonably necessary to bring about that alien's removal from the United States," *Zadvydas v. Davis*, 533 U.S. 678, 689, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001); *see also id.* at 701, 121 S.Ct. 2491 ("[A]n alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future."). The categories of aliens covered by § 1231(a)(6) include those who, like Guerrero-Sanchez, are inadmissible under 8 U.S.C. § 1182.

Critically, unlike § 1226(a), the text of § 1231(a)(6) does not explicitly authorize a bond hearing. Therefore, at least according to the Government, whether Guerrero-Sanchez is entitled to a bond hearing turns on whether § 1226(a) or § 1231(a) authorizes his detention. We note at the outset that this is a question that has divided our sister circuits. *Compare Padilla-Ramirez v. Bible*, 882 F.3d 826, 832 (9th Cir.2017) (holding that § 1231(a) governs), *with Guerra v. Shanahan*, 831 F.3d 59, 64 (2d Cir.2016) (holding that § 1226(a) governs).

*Guerrero-Sanchez*, 905 F.3d 208, 213–14 (3d Cir. 2018). *Guerrero-Sanchez* noted that

"[t]he other classes of aliens covered by § 1231(a)(6) are those removable under § 8 U.S.C.

1227(a)(1)(C), 1227(a)(2), or 1227(a)(4), and those who have "been determined by the

Attorney General to be a risk to the community or unlikely to comply with the order of

removal," 8 U.S.C. § 1231(a)(6)." 905 F.3d at 214 n.3.

The foregoing review confirms the unsettled nature of the law regarding whether §

1226 or § 1231 controlled the detention of a detainee in Petitioner's position. Therefore, the

Court concludes that, within the legal framework set out above for the award of EAJA fees, there was a reasonable basis in law for Respondents' theory that § 1231 controlled the detention of a detainee in withholding-only proceedings and such a detainee would not be statutorily entitled to a bond hearing. Whether there is a reasonable connection between the facts alleged and the legal theory advanced regarding Respondents' §§ 1226/1231 position, and thus a legal justification for the position, will be discussed later in the Memorandum.

ii.      8 U.S.C. § 1225 versus 8 U.S.C. § 1231

Respondents assert that their position that Petitioner was appropriately detained under § 1225 if the Court concluded that § 1231 did not apply was substantially justified. (Doc. 42 at 16.) Because the R&R determined that Petitioner was not entitled to fees on the basis of the unsettled nature of the law regarding §§ 1226 and 1231, the Magistrate Judge did not reach the question of whether Respondents' § 1225 position was substantially justified.

The Court rejected Respondents' § 1225 argument in its July 26, 2017, Memorandum, concluding that their position was contradictory and unfounded. (Doc. 32 at 14-16.) Petitioner's fee-related substantially-justified argument regarding § 1225 is brief and conclusory. (*See* Doc. 42 at 20-21.) For this reason and those previously articulated by Judge Caldwell (Doc. 32 at 14-16), the Court concludes Respondents have not satisfied their burden of showing the legal theory propounded § 1225 had a reasonable basis in law.

*b.*     *Constitutional/Regulatory Basis for Detention*

Respondents assert that their position that "Petitioner's detention, though exceeding six months, was not unconstitutional and did not violate the INA, because Petitioner's removal was reasonably foreseeable and because Petitioner did not provide any reason to believe that there was no significant likelihood of removal in the reasonably foreseeable future" was substantially justified. (Doc. 42 at 18; *see also id.* at 16.) As noted above, the R&R determined that Petitioner was not entitled to fees on the basis of the unsettled nature of the law regarding §§ 1226 and 1231; the Magistrate Judge did not reach the question of whether the constitutional and regulatory basis of Respondents' position was substantially justified.

Although Respondents do not elaborate the legal theory relied upon regarding their position that constitutional considerations related to Petitioner's detention were satisfied in their brief opposing Petitioner's request for fees (*see* Doc. 42 at 18-19), throughout this litigation, Respondents have relied upon *Zadvyas v. Davis*, 533 U.S. 678, 701 (2001), stating in their initial brief that "*Zadvydas* squarely controls this case" regarding due process and Immigration and Nationality Act" ("INA") concerns. (Doc. 6 at 17-18.) They also rely on regulatory provisions enacted after *Zadvydas*, 8 C.F.R. §§ 241.4(k)(1), (k)(2), in support of their position that periodic custody reviews for a detainee in Petitioner's situation satisfy due process requirements. (Doc. 6 at 19-20; Doc. 42 at 18-19.)

*Zadvydas* concluded that, pursuant to 8 U.S.C. § 1231(a)(6), the presumptive limit to a reasonable duration of detention under the post-removal-period provision of the Immigration and Nationality Act was six months and, after this period,

> once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6–month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Zadvydas*, 533 U.S. at 701.  Respondents note that when the six-month period has passed, "the Court must still examine whether a 'significant likelihood of removal' exists." (Doc. 6 at 18.)  Respondents argued from the outset of this habeas action, "*Zadvydas* does not require that an alien who is in post-order detention be given a bond hearing once the presumptively reasonable six-month period ends; instead, *Zadvydas* requires that the alien bear the burden of showing that his removal is not likely in the reasonably foreseeable future."[17] (Doc. 6 at 20 (citing *Zadvydas*, 533 U.S. at 701).)

---

[17] Respondents also cite *Jama v. Immigration and Customs Enforcement*, 543 U.S. 335, 347 (2005), in support of their constitutional position (*see* Doc. 6 at 18, 19, Doc. 42 at 18-19), but they do not develop any related argument or basis for their reliance.  Insofar as *Jama* addressed a different issue (failure of the country selection process) and did not apply or consider *Zadvdas* beyond simple citation, the Court finds no controlling authority therein.  543 U.S. at 703. Similarly, Respondents cite *Dutton-Myrie v. Lowe*, Civ. No. 3:13-CV-2160, 2014 WL 5474617, at *4 (M.D. Pa. Oct. 28, 2014), in support of their INA regulatory position (Doc. 6 at 19, Doc. 42 at 18-19, Doc. 47 at 15), but, like *Jama*, they do not develop any related argument or otherwise explain their reliance.  Therefore, the Court will not consider the relevance/impact of these cases to the legal theory advanced.

As evidenced by Petitioner's argument supporting his objection to the R&R (*see* Doc. 46 at 7), Petitioner agrees that *Zadvydas* considerations regarding foreseeability of removal apply to this case. Thus, there is a reasonable basis in law for the theory propounded and whether there is a reasonable connection between the facts alleged and the legal theory advanced regarding Respondents' constitutional position, i.e., a legal justification for Respondents' position regarding the foreseeability of removal in this case, will be discussed below.

Respondents support their position that Petitioner received the due process required with citation to 8 U.S.C. §§ 241.4(k)(1) and (k)(2). (*See* Doc. 6 at 19, Doc. 42 at 18-19, Doc. 47 at 15). Petitioner does not challenge Respondents' reliance on this authority (*see* Docs. 8, 43, 46), and the Court finds no basis to do so at this stage of the inquiry. Therefore, the Court concludes Respondents have pointed to a reasonable basis in law for their position regarding custody reviews. The correlation between this authority and the facts of the case will be addressed below.

3.    <u>Connection Between Facts Alleged and Legal Theories</u>

Under the third and final prong of the *Hanover* inquiry, the Court must determine whether respondents have satisfied their burden of establishing substantial justification for their position because there was a reasonable connection between the facts alleged and the legal theory advanced. 989 F.2d at 128.

*a.*     *Sections 1226 and 1231 Statutory Position*

The Court concludes there is a reasonable connection between the facts alleged and the legal theory advanced and, therefore, Respondents' position that § 1231 controlled Petitioner's detention and he was not statutorily entitled to a bond hearing was substantially justified. The fact that *Guerrero-Sanchez* later determined that § 1231(a)(6) contains an implicit bond hearing requirement after prolonged detention for *all* aliens detained under the provision, including those who have a reinstated removal order and are pursuing withholding-only relief, does not undermine Respondents' bond-hearing-requirement position in that *Guerrero-Sanchez* provided a detailed analysis of the issue and announced its determination on April 18, 2018, long after this habeas action was decided.[18]  *Guerrero-Sanchez*, 905 F.3d at 218-25.  To the extent, Petitioner reiterates in his brief supporting his objections to the R&R that the Court's decision in *Ignacio v. Sabol*, Civ. A. No. 1:15-CV-2423, 2016 WL 4988056 (M.D. Pa. Sept. 9, 2016), undermines Respondents' position that § 1231 controlled his detention because Judge Caldwell decided therein that § 1226 controlled the detention of a petitioner in the same situation as Petitioner (Doc. 46 at 8), the Court concludes the assertion is without merit.  As discussed above, Respondents' reliance on law contrary to Judge Caldwell's decision in *Ignacio* was reasonable for several reasons,

---

[18]  With his October 18, 2018, filing, Petitioner identifies *Guerrero-Sanchez* as supplemental authority and specifically cites the bond-hearing determination as supportive of his position that Respondents' position was not substantially justified no matter what statute governed his detention.  (Doc. 48 at 1-2.)  As argued by Respondents (Doc. 49 at 1-2), the Court agrees that *Guerrero-Sanchez* confirms the unsettled nature of the law during the relevant time.  (*See supra p*p. 22-24.)

not the least of which was the fact that the relevant *Ignacio* issue was under appeal to the Third Circuit.  (*See supra* p. 23.)

The conclusion that Respondents' position that § 1231 controlled Petitioner's detention and he was not statutorily entitled to a bond hearing was substantially justified does not end the Court's inquiry or establish that Petitioner is not entitled to attorney's fees. As Petitioner argues in support of his objections, regardless of the statute deemed applicable, the Court must also consider whether Respondents have satisfied their burden of showing that their position regarding Petitioner's removability was substantially justified. (*See* Doc. 46 at 7-10.)

b.    *Constitutional/INA Position*

Respondents asserted in their brief opposing Petitioner's request for fees that their position was supported by the facts and the law:

> Respondents . . . argued--based on a declaration from ICE, Petitioner's prior removal to Honduras, absence of any evidence from Petitioner otherwise, the INA, and case law—that Petitioner's detention, though exceeding six moths, was not unconstitutional and did not violate the INA, because Petitioner's removal was reasonably foreseeable and because Petitioner did not provide any reason to believe that there was no significant likelihood of removal in the reasonably foreseeable future.

(Doc. 42 at 18 (citing Doc. 1-2 at 2, Doc. 6 at 17-21, Doc. 7-2 at 2, Doc. 20 at 13, 8 U.S.C. § 1231(a)(6), *Zadvydas*, 553 U.S. at 699-701, *Jama v. ICE*, 543 U.S. 335, 338-48 (2005)).)[19]

---

[19] For reasons set out previously in the margin, the Court does not consider any support which may be found in *Jama*.  *See supra* n.17.

Although the Court questions whether Respondents' abbreviated argument contained in their brief (*see* Doc. 42 at 18-19) satisfies their need to "make a strong showing that [the government's] position was substantially justified," *Nat. Res. Def. Council*, 703 F.2d at 712, the Court will nonetheless consider the facts allegedly supportive of the legal position and conclusion that their position was substantially justified.  In doing so, the Court will include Respondents' articulation of the position at issue in their response to Petitioner's objections and the facts relied upon therein.  (Doc. 47 at 12-15.)

First looking at the cited support for Respondents' position that Petitioner's removal was reasonably foreseeable and he did not show otherwise (Doc. 42 at 16, 18), they rely on the following record evidence: the March 1, 2016, Decision and Order of the Immigration Judge (*id.* at 18 (citing Doc. 1-2 at 2); the undated Declaration of Paul Posluszny, Supervisory Detention and Deportation Officer (*id.* (citing Doc. 7-2)); and sections of previously filed briefs (*id.* (citing Doc. 6 at 17-21; Doc. 20 at 13)).

In the March 1, 2016, Decision and Order of the Immigration Judge (*id.* at 18 (citing Doc. 1-2 at 2), Petitioner's application for asylum was pretermitted, his application for withholding of removal was pretermitted, and his application for protection under Article 3 of the Convention Against Torture was denied.  (Doc. 42 at 18 (citing Doc. 1-2 at 2).)

As set out previously, Mr. Posluszny's statements included the following: he was the officer assigned to the removal efforts regarding Petitioner and was familiar with his immigration records and litigation history; he was aware of Petitioner's appeal of the BIA

decision to the Court of Appeals for the Third Circuit and that Court's August 30, 2016, stay of removal; Petitioner had custody reviews on October 13, 2015, January 15, 2016, April 22, 2016, and September 1, 2016; Petitioner, through his attorney, had submitted a request for release, a review of Petitioner's file was conducted, and a formal response was forwarded to Petitioner's attorney on July 6, 2016;[20] and it had been his "experience that the government of Honduras promptly issues travel documents upon request for the repatriation of its nationals. Once the stay of removal is lifted, Mendoza's removal would occur approximately 30 days later." (Doc. 7-2 at 2.)

Respondents also refer to a section of their initial brief (Doc. 42 at 18 (citing Doc. 6 at 17-21)) in which they set out their *Zadvydas* argument and related "factual" assertions, including the following: Petitioner makes no allegations that Honduras will not issue a travel document; he was previously removed to Honduras and ICE believes there is a significant likelihood of removal in the reasonably foreseeable future, citing the IJ decision and Mr. Poluzny's statement regarding prompt issuance of travel documents by the government of Honduras. (Doc. 6 at 18-19.)

Finally, Respondents' cite their Supplemental Brief filed on April 4, 2017, wherein they again argued that Petitioner's detention was constitutional under *Zadvydas*. (Doc. 42

---

[20] *See supra* p. 14 & n.8

at 16 (citing Doc. 20 at 12).)  Respondents reviewed their previous argument and

elaborated on removal to a country other than Honduras:

> He has been removed in the past, so far every court to consider his withholding
> claim has rejected it, and his fully-briefed Third Circuit appeal is set to be heard
> next month. There is thus no basis to argue his detention is indefinite. See ECF
> No. 6-2 ("Honduras promptly issues travel documents upon request for the
> repatriation of its nationals."). Even if he is granted withholding, Mendoza will
> still have a final removal order and DHS will still have a statutory duty to try to
> remove him, albeit to a third country. § 1231(b)(2). Mendoza has not cited any
> basis to establish his removal to Honduras or a third country is unlikely, nor can
> he at this stage when the Supreme Court has held courts should not prejudge
> the likelihood of success of the third-country selection process before that
> process has even begun. *Jama v. ICE*, 543 U.S. 335, 338-348 (2005). If the
> removal order cannot be executed to a particular country for any reason,
> including a withholding claim, it does not affect the order's finality, so detention
> remains under § 1231, and under *Zadvydas*, detention is constitutional until it
> appears no "country can be found that will take him" and he is left in a
> "removable-but-unremovable limbo." *Id.* at 343. Mendoza has not reached that
> point.

(Doc. 20 at 12-13.)

In their brief opposing Petitioner's objections, Respondents reiterate arguments

previously made regarding *Zadvydas* and removability, including that "their position that

Petitioner had not established that there was no likelihood of removal in the reasonably

foreseeable future was reasonable and substantially justified." (Doc. 47 at 13.)  They again

cite his previous removal to Honduras, that at the time he filed his habeas petition, both an

IJ and the BIA had rejected his claim of withholding of removal to Honduras in the future,

and that his later release and grant of withholding of removal did not change the substantial

justification of their position at the time the habeas petition was decided.  (Doc. 47 at 13-14.)

Respondents add "[a]t that point there was a substantial likelihood that he would be removed to Honduras again." (*Id.* at 14.) Respondents also assert that

> even if he had been able to show his detention under § 1231 was unjustified he also had to establish that there was no other country to which he could be removed. *See* 8 U.S.C. § 1231(b)(2), (3). Thus, Petitioner's contention that his removal was not reasonably foreseeable under *Zadvydas* is unfounded.

(*Id.*)

A review of the proffered evidence and related rationale shows that Respondents' position that "Petitioner's removal was reasonably foreseeable" (Doc. 42 at 18) *and that this remained the case through the time when the habeas petition was decided, at which point there was a substantial likelihood that he would be removed to Honduras again* (Doc. 47 at 13 (emphasis added)) was not substantially justified. At most, the evidence shows that Petitioner's removal to Honduras was reasonably foreseeable when the BIA affirmed the IJ's decision and through the period where Petitioner was granted a stay after filing for review of the BIA decision in the Third Circuit Court of Appeals. Though Respondents' evidence is slim and their argument is vague concerning the reasonability of removal pre-Third Circuit stay, the Court concludes that, after the IJ decision and BIA affirmance, Respondents' position that Petitioner's removal to Honduras was reasonably foreseeable was substantially justified based on the past cooperation of the government of Honduras and the lack of any impediment to implementing the reinstated removal order.

However, for the reasons discussed below, the Court cannot conclude this to be the case throughout the litigation period. Whether viewed from Respondents' position that

removal was reasonably foreseeable throughout the litigation or that Petitioner did not provide any reason to believe that there was no significant likelihood of removal in the reasonably foreseeable future, Respondents' proffered arguments do not satisfy their burden of showing substantial justification.

Keeping in mind Respondents' burden to "make a strong showing" that the relevant position was substantially justified, *Nat. Res. Def. Council*, 703 F.2d at 712, Respondents' substantial justification argument is problematic for several reasons including: 1) the fact that their fee-related identification of their position regarding removability does not reference the record with respect to "the action or failure to act" on this issue by ICE, "the agency upon which the civil action is based," 28 U.S.C. § 2412(d)(1)(B); 2) there is no discussion of ICE's position relevant to the likelihood of removal in the reasonably foreseeable future beyond citation and reference to the Declaration of Paul Posluszny (*see* Doc. 42 at 18 (citing Doc. 7-2 at 2)); and 3) subsequent information from Respondents' attorneys stated only that ICE's position had not changed during the course of the litigation (*see supra* pp. 18-21 (citing Doc. 35-9 at 2, Doc. 35-11 at 2, Doc. 35-12 at 2)). To determine whether this is sufficient evidence to satisfy Respondents' burden, the Court will again review the declaration and also subsequent information regarding ICE's position in the context of the progression of proceedings in the District Court and Circuit Court.

As set out above, Mr. Posluszny stated the following: "It has been my experience that the government of Honduras promptly issues travel documents upon request for the

repatriation of its nationals.  Once the stay of removal is lifted, Mendoza's removal would occur approximately 30 days later."  (Doc. 7-2 at 2 ¶ 8.)  On its face, this statement does not provide support for reasonable foreseeability of removal: the triggering event for the estimated time it would take for a petitioner to be removed to Honduras (30 days) is the lifting of the stay imposed by Third Circuit order and there was no date-certain or estimate of when the stay would be lifted.  Further, Mr. Posluszny's statement addressed only removal to Honduras, and, even if the lifting of the stay had been estimated, the removal to a third country was not addressed and that possibility was a factor to be considered in the reasonability calculation once the stay had was ordered.  This is so because the Circuit Court issued the stay based on the finding that Petitioner had met the requisite standard set out in *Nken v. Holder*, 556 U.S. 418, 434 (2009), (Doc. 7-4 at 2.)  In the *Nken* standard referenced by the Circuit Court, the first of the four identified factors is "whether the stay applicant has made a strong showing that he is likely to succeed on the merits."  556 U.S. at 434.  Thus, following the order staying removal on August 30, 2016, determination of reasonable foreseeability logically needed to include removability to a country other than Honduras.

Turning now to whether subsequent information provided by ICE provided substantial justification for Respondents' position, Petitioner's counsel reached out to

Respondents' counsel regarding their position on several occasions.[21]  A summary of those communications follows.

On the same day the stay order was issued, Petitioner's counsel sent an e-mail to Attorney Hoffman stating that that the Order "indicates that the Third Circuit agreed with our argument that we are likely to succeed on the merits on Mr. Mendoza's petition for review, and further indicates that Mr. Mendoza's removal is not reasonably foreseeable at present." (Doc. 35-7 at 2.)  Attorney Hoffman said she would pass the information along to ICE.  (*Id.*)  However, the next Petitioner's counsel heard anything about ICE's position was an e-mail from Attorney Saeed on November 1, 2016, in which she informed Petitioner's counsel that ICE had indicated their position remained the same.[22]  (Doc. 35-9 at 2.)

On November 18, 2016 (at which point Petitioner had been detained for 478 days), Petitioner's counsel wrote to Respondents' counsel, Attorney Saeed and Attorney Gisela Westwater, stating that the *Ignacio* decision combined with the Third Circuit's stay of removal indicated that the Government's position in the litigation was "no longer 'substantially justified'" and, if the matter could not be resolved through supervised release,

_____

[21]  The Court focuses on communications in which the issue of removability is implicated. For example, the Court does *not* include in the listed communications that addressing the applicability of the *Ignacio* case in that *Ignacio* was not relevant to the foreseeability of removability and, while Petitioner raised the length of detention and possible release, he did not raise the foreseeability of his removal in that communication. (*See* Doc. 35-8 at 5.)

[22]  Petitioner's counsel had sent an e-mail about the *Ignacio* decision on October 19, 2019, *see supra* n.21, which led to dialog about ICE's position.  (*See* Doc. 35-8, Doc. 35-9.)

he would move for attorney's fees at the resolution of the case. (Doc. 35-10 at 2-3.) Attorney Westwater responded on December 5, 2016, stating "[w]hile ICE thanks you for reaching out regarding possible settlement, my client is unable to release your client at this time." (Doc. 35-11 at 2.)

On May 25, 2017, following the issuance of the Magistrate Judge's R&R and the Third Circuit panel's hearing, Petitioner's counsel contacted Respondents' counsel, Attorney Ward, regarding Petitioner's detention status and other relevant facts, stating that "[g]iven the strong probability of a remand by the Third Circuit, it is extremely unlikely that Mr. Mendoza will be removed in the near future, if at all." (Doc. 35-12 at 6.) On May 30, 2017, Attorney Saeed replied, saying she was working on the case with Attorney Ward and she would "reach out to ICE to discuss and will get back in touch with you." (*Id.* at 4.) On May 31, 2017, Attorney Saeed told Petitioner's counsel "I have discussed with my clients and they are not interested in a bond hearing or supervised release for Mr. Mendoza-Ordonez." (*Id.* at 3.) Petitioner's counsel sent a follow-up email asking if ICE provided "any rationale for its unwillingness to reconsider Mr. Mendoza's custody." (Doc. 35-12 at 2.) On June 1, 2017, Attorney Saeed replied that "ICE simply stated that they are not interested in a bond hearing or supervised release for Mr. Mendoza." (*Id.* at 2.)

This evidence review shows that after August 30, 2016 (the period after the Circuit Court stay order (Doc. 7-4 at 2), and after Petitioner's counsel's request for consideration of release because of the stay's significance regarding removability (Doc. 35-7 at 2)), neither

ICE nor Respondents communicated on the central question of removability now under consideration. Importantly, though Petitioner's counsel raised the issue, neither ICE nor Respondents indicated that Petitioner *did not meet his burden* regarding a showing that there was "no significant likelihood of removal in the reasonably foreseeable future," *Zadvydas*, 533 U.S. at 701, neither ICE nor Respondents addressed removability in the "reasonably foreseeable future" at all, and, therefore, there was no discussion of the key *Zadvydas* consideration, i.e, whether there is "no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. Without sufficient explanation or argument regarding the important agency-position aspect of the substantially-justified inquiry, these omissions are relevant and troubling.

As reviewed above, Respondents defend their position by pointing to the facts that Petitioner was previously removed to Honduras and, at the time he filed his habeas petition, both an immigration judge and the BIA had rejected his claim of withholding of removal. (Doc. 47 at 13 (citing Doc. 1-3 at 2, Doc. 6 at 5-6).) Although the Court has found that these facts support Respondents' position up to the point where Petitioner filed a PFR and the Third Circuit ordered a stay of his removal, the facts cited do not directly or sufficiently address Petitioner's position that the landscape significantly changed following the Circuit Court's stay Order and further changed based on the Third Circuit panel's comments at oral argument.

Further, although Respondents correctly note that a grant of his petition would mean that Petitioner could not be removed to Honduras but could be removed to a third country,[23] their statement that "he also had to establish that there was no other country to which he could be removed" (Doc. 47 at 14 (citing 8 U.S.C. § 1231(b)(2), (3))) broadly construes Petitioner's burden and narrowly construes Respondents' burden which is "strong" at this stage of the proceedings, *Nat. Res. Def. Council*, 703 F.2d at 712. With their citation to subsections of 8 U.S.C. § 1231 and conclusory assertion regarding Petitioner's burden related to third-country considerations, Respondents do not discuss the application of *Zadvydas* principles to third-country removal or otherwise satisfy their burden of showing their position was substantially justified based on this issue.

Importantly, this broad-brush argument does not address the omissions discussed above. Although Petitioner's counsel spoke of the unlikely possibility of removal in the near or reasonably foreseeable future, correlating Petitioner's length of detention with non-dispositive indicators that Petitioner would succeed on the merits (a result which could include ongoing consideration of his removal issue on remand (*see, e.g.*, Doc. 35-12 at 6; *see also* Doc. 35-7 at 2)), ICE and Respondents nevertheless did not address or express

_____

[23] The Circuit Court's August 23, 2017, *Mendoza-Ordonez* decision notes that Petitioner sought review of his asylum claim but conceded at oral argument that the Circuit Court's May 2, 2017, decision in *Cazun v. Attorney General of the United States*, 856 F.3d 249, 260 (3d Cir. 2017), foreclosed such relief. 869 F.3d at 168. The Circuit Court's discussion of the asylum issue indicates that his asylum claim remained viable through May 2, 2017, and could have had an impact on the removability question up to that point. However, the parties do not raise this issue and further consideration of it is not warranted in this Memorandum.

any concerns about the length of Petitioner's detention while this habeas action was pending.  Such omissions are disconcerting for the general reasons set out above as well as specific considerations inherent in the *Zadvydas* framework which Respondents acknowledge to be relevant to this case.  For example, inherent in the current inquiry is the question of "what counts as the 'reasonably foreseeable' future,'" *Zadvydas*, 533 U.S. at 701, and the Court's advisement that, as the period of confinement grows, what counts as the "'reasonably foreseeable future' conversely would have to shrink," *id.*  Thus, the length of detention is relevant to both a detainee's burden and the Government's burden, with the former arguably decreasing and the latter increasing as the detention continues.  While making no determination on what the "reasonably foreseeable future" means here, the Court notes that "[a]lthough an alien may be responsible for seeking relief, he is not responsible for the amount of time that such determinations may take." *Ly v. Hansen,* 351 F.3d 263, 272 (6th Cir.2003).  To conclude that a petitioner's voluntary pursuit of bona fide legal challenges to his removal "renders the corresponding increase in time of detention reasonable, would 'effectively punish [the petitioner] for pursuing applicable legal remedies.'" *Leslie v. Attorney Gen. of U.S.*, 678 F.3d 265, 271 (3d Cir. 2012) (quoting *Oyedeji v. Ashcroft,* 332 F. Supp. 2d 747, 753 (M.D. Pa. 2004)), *abrogated in part and on other grounds by Jennings v. Rodriguez*, 138 S. Ct. 830, 847 (2018); *see also Guerrero-Sanchez*, 905 F.3d at 220.  The Third Circuit Court of appeals declined to adopt such a position.  678 F.3d at 271.

In this legal framework, the length of Petitioner's detention in general is relevant and Petitioner's detention related to bona fide legal challenges to his removal counts as time to be considered in the "reasonably foreseeable future" calculus   The fact that ICE's position remained the same from before the stay order through the disposition of Petitioner's habeas action despite the growing duration of Petitioner's detention and indicators that it would continue with the "likely success" of his PFR (remand of the matter to ICE for further consideration), more is needed from Respondents for the burden of substantial justification to be satisfied.  Respondents conclusorily stated at the outset of this litigation that Petitioner, who had the initial burden of showing that his removal was not likely in the reasonably foreseeable future under *Zadvydas*, had not provided any basis for a determination that his removal was unlikely and he could not do so.  (Doc. 6 at 20 (citing 533 U.S. at 701).)  They continued to adhere to that position though the facts and likelihood of removability to Honduras had shifted.  Once the shift occurred and ICE failed to discuss the issue of removability though it was raised by Petitioner, Respondents' position essentially boils down to Petitioner's removal was reasonably foreseeable because we say it was and Petitioner did not meet his burden because we say he did not.

In sum, based on ICE's lack of response to Petitioner's statements and inquiries regarding the foreseeability of removability and Respondents' failure to recognize and discuss a potential shift in the landscape as of the Third Circuit stay of removal and Petitioner's counsel's subsequent request that they reconsider their position, the Court

cannot conclude that Respondents met their burden of establishing that the position on the issue of removability was substantially justified after November 1, 2016. In so finding, the Court emphasizes that the landscape did not shift because of the *results* of Petitioner's PFR (*see* Doc. 47 at 6), any determination made in *Ignacio*, or any decision on the merits of Petitioner's habeas action. Rather, it shifted because of the implications of the stay, other indicia of success on the merits, and Petitioner's communication with Respondents regarding these matters.

The Court further finds that Respondents have not shown that custody reviews conducted pursuant to 8 C.F.R. §§ 241.4(k)(1), (k)(2), which were provided to Petitioner during his detention, alleviate the need to make the requisite showing regarding removability. Nor have Respondents provided sufficient detail about the reviews for the Court to determine whether they satisfy the regulatory requirements cited.[24] Therefore, the Court concludes Petitioner is entitled to EAJA fees from the time ICE/Respondents failed to

---

[24] The record indicates that Petitioner had four custody reviews: August 12, 2015, October 14, 2015, April 22, 2016, and September 1, 2016. *See supra pp.* 9-12, 16, 17, 20-21. However, detail is provided only as to the first two reviews where the reviewing officer concluded Petitioner was a flight risk. *See supra pp.* 9-12. Interestingly, although the August 2015 review welcomed additional information from Petitioner demonstrating that he did not present a danger and was not a flight risk (Doc. 1-5 at 2), and Petitioner's counsel provided that information in October 2015 (Doc. 1-7 at 2), no evidence suggests that the information provided was acknowledged or discussed at the October 2015 custody review (Doc. 1-8 at 3). Further, when Petitioner's counsel requested information about reviews from Attorney Saeed on May 31, 2017, noting that he had no information about reviews since August 2016 (which meant the last review about which he had received information was April 22, 2016) and he should have been receiving information about them as attorney of record (Doc. 35-12 at 2), Attorney Saeed said she had inquired with ICE about the custody reviews and would pass along information when she received it. (*Id.*) The record contains no further information about custody reviews.

adequately respond to Petitioner's counsel's communications about the foreseeability of removal.  The Court fixes this date to be November 1, 2016, when Attorney Saeed confirmed that "ICE indicated that their position remains the same."[25]  (Doc. 35-9 at 2.)   The award of fees from November 2, 2016, forward will be addressed below.

## C.    FEE AWARD

Having determined that Petitioner is entitled to fees and costs, the Court turns to the appropriate rate and number of hours which should be used to calculate the award. Petitioner initially requests fees at a rate of $250.00 per hour for 91.1 hours.  (Doc. 35 at 15.)  The rate requested is above the EAJA maximum statutory rate.  (*Id.* at 16.) Respondents assert that, if fees are awarded, the Court should award fees at the EAJA rate for fewer hours than requested.[26]  (Doc. 42 at 24-25.)

As set out previously, the EAJA provides that "a court shall award to a prevailing party other than the United States fees and other expenses."  28 U.S.C.A. § 2412(d)(1)(A). The statute further provides the following:

> "fees and other expenses" includes   the   reasonable   expenses   of   expert witnesses, the reasonable cost of any study, analysis, engineering report, test, or project which is found by the court to be necessary for the preparation of the party's case, and reasonable attorney fees (The amount of fees awarded under

---

[25] Based on the timeline set out in the text, *see supra* pp. 9-21, and the related discussion of the issue, *see supra* p. 39-40, the Court concludes that the period of time from when Petitioner's counsel made his request regarding consideration of the reasonable foreseeability of removal on August 30, 2016, to Attorney Saeed's response on November 1, 2016, is appropriately attributed to ICE's administrative consideration of the matter upon receiving relevant information from Attorney Hoffman and others.

[26]  Respondents do not contest Petitioner's assertion that the EAJA rate for time expended in 2016 is $204.92 and for time expended in 2017 is $211.07.  (Doc. 35 at 17; Doc. 42 at 24 n.10.)

this subsection shall be based upon prevailing market rates for the kind and quality of the services furnished, except that (i) no expert witness shall be compensated at a rate in excess of the highest rate of compensation for expert witnesses paid by the United States; and (ii) attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee.)

28 U.S.C.A. § 2412(d)(2)(A).  Special factors which authorize a reviewing court to award a

higher fee also include "some distinctive knowledge or specialized skill needful for the

litigation in question." *Pierce*, 487 U.S. at 572.

1.      Rate Requested

Petitioner asserts that "special factors" justify the $250 per hour rate requested: he

has specialized immigration experience, the case involved representation of a foreign

national with intertwined immigration and habeas proceedings, and the limited availability of

immigration attorneys in the Middle District of Pennsylvania.  (Doc. 37 at 10-11 (citing

*Ildefonso-Candelario v. Lowe*, Civ. A. No. 3:16-CV-2120, 2017 WL 4310078, at *6-9 (M.D.

Pa. Oct. 17, 2016); *Soriano v. Sabol*, Civ. A. No. 3:16-CV-0271, 2017 WL 3268400, at *6--8

(M.D. Pa. Aug. 1, 2017); *Walker v. Lowe*, Civ. A. No. 4:15-CV-0887, 2016 WL 608229, at

*3-5 (M.D. Pa. Oct. 17, 2016)).

Although this case does not have the criminal conviction component present in the

cited cases, it certainly has complex procedural and statutory issues, Petitioner's counsel

has specialized knowledge and experience similar to the attorney considered in those cases

(*see* Doc. 37 at 10-11), and all are Middle District of Pennsylvania cases with the same

same limited availability or attorneys, *see, e.g., Ildefonso-Candelario*, 2017 WL 4310078, at

*8.   In *Walker*, Judge Brann agreed with the findings of an Eastern District case in his

consideration of special factors, stating

> "[t]he Court is satisfied that Petitioners' counsel's 'specialized knowledge of
> immigration law, and the limited availability of attorneys who would have taken
> this case at the statutory rate, are 'special factors' which justify [a reasonable]
> increase in the rate of pay." I find that in this case a rate of $250 per hour is
> reasonable.

2016 WL 6082289, at *5 (*quoting Harriott v. Ashcroft*, 277 F. Supp. 2d, 546-47 (E. D. Pa.

2003)).   Relying on *Walker* and *Soriano*, in *Ildefonso-Candelario* Judge Mannion found the

same special factors supported his determination that a rate of $250 per hour was

reasonable.   2017 WL 4310078, at *9.   He noted that counsel worked *pro bono* in both

*Soriano* and *Ildefonso-Candelario* with excellent representation.   *Id.*

Respondents attempt to distinguish the cases cited by Petitioner in support of the

$250 per hour rate, but the Court does not find that the distinctions advanced undermine

Petitioner's argument that the cases support an award above the EAJA maximum.

Moreover, the Court also finds that special factors identified above warrant an award of

$250 per hour.[27]

---

[27] In addition to the factors relied upon, the Court notes that Petitioner's counsel provided *pro bono* representation which began during administrative proceedings and he is not compensated for the pre-litigation representation.

## 2.    Number of Hours

With his motion, Petitioner seeks compensation for a total of 91.1 hours and accounts for all of these hours.  (Doc. 35-5.)  Based on the determination that Petitioner is entitled to fees beginning on November 2, 2016, the Court deducts hours before that date which results in a reduction of 25.8 hours for a total of 73.3 hours.  (*See* Doc. 35-5 at 2, 4-6.)  Petitioner also seeks an additional 3.2 hours related to his fee-related reply brief.  (Doc. 43 at 8 (citing *Walker*, 2017 WL 6082289, at *5 (awarding additional fees for EAJA reply brief)).  The Court will grant this additional 3.2 hours based on the authority cited and the reasonableness of the number of hours expended.  See Walker, 2017 WL 6082289, at *5 (awarding an additional 5.5 hours for the reply brief characterized by the Court as a "fees on fees" request).  Therefore, the EAJA award will be calculated on 76.5 hours.

Respondents contend that the number of hours should be reduced on several grounds: 1) the time spent preparing the fee petitioner should be reduced; 2) fees related to contacting Congressional official should not be awarded or should be awarded at no higher than the statutory rate; and 3) fees should not be awarded for "unproductive travel time" or, alternatively, should be awarded at no more than half the statutory rate.  (Doc. 42 at 26-28.)

First Respondents' contention regarding preparation of the habeas petition is moot because the petition and reply brief were filed before November 2, 2016 (Doc. 35-5 at 4-6), and those hours are not included in the 73.3 hours calculated.

Second, although Respondents contend the 1.9 hours Petitioner's attorney spent communicating with Congressional officials about Petitioner's case are not fees related to a "civil action" as required by §§ 2412(b) and (d)(1)(A) (Doc. 42 at 27), the Court agrees with Petitioner that these "fees were directly related to this 'civil action' because they were efforts to produce a settlement in this case" (Doc. 43 at 7). Therefore, the Court will not deduct 1.9 hours from the calculation. The Court also rejects Respondents' alternative request that the time be compensated at a lower rate (Doc. 42 at 27) in that they cite no authority upon which to base such a reduction and present no argument why the expertise which warrants the $250 per hour does not come into play when Petitioner's counsel was advocating for him with Congressional officials.

Third, Respondents cite no binding or persuasive authority that Petitioner's counsel should not be compensated for travel time or should be compensated at a lower rate. (*See* Doc. 42 at 27-28.) Given the geographic realities of the Middle District of Pennsylvania and the recognition discussed above that there are a limited number of immigration attorneys practicing in the area, the Court will not deduct time for travel from the amount calculated.

Having found that no deductions are warranted from the 76.5 hours calculated and the rate of $250 per hour is appropriate, the Court concludes that Petitioner is entitled to $19,125.00 in attorney's fees.

3. **Costs and Total EAJA Award**

Petitioner identifies total costs of $476.49. (Doc. 35-5 at 2.) Respondents do not dispute these costs. (*See* Doc. 43.) However, based on the starting date of the fee award, the Court will reduce the $5.00 in costs expended before November 2, 2016. (Doc. 35-5 at 4.) Petitioner will be awarded costs of $471.49.

With costs of $471.49 and fees of $19,125.00, Petitioner is entitled to an EAJA award for fees and costs of $19,596.49.

## III. CONCLUSION

For the reasons discussed above, the R&R (Doc. 44) will not be adopted and Petitioner's Motion for Attorneys' Fees and Costs Pursuant to the Equal Access to Justice Act (Doc. 35) will be granted in part. The Motion will be granted in that Petitioner will be awarded EAJA fees and costs as of November 2, 2016. The Motion will be denied in that Petitioner will not be awarded EAJA fees and costs for the period of August 21, 2016, through November 1, 2016. (See Doc. 35-5 at 4-7.) The Court will award a total of $19,596.49 in fees and costs. Because Petitioner has executed a Net Worth and Assignment Declaration assigning the payment of any award of fees and Costs to Brophy and Lenahan P.C., via a check mailed to Mr. Brophy's office address (Doc. 35-3; *see also* Doc. 35 1-2), the award will be made as requested.

An appropriate Order is filed simultaneously with this Memorandum.

Robert D. Mariani
United States District Judge